UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    No. 1:23-mj-00120

v.                                   Hon. Ray Kent
                                          United States Magistrate Judge

ANDREW BLAIR HOWARD,

        Defendant.
_____/

## GOVERNMENT'S REPLY BRIEF

The government submits this reply brief to provide the Court with additional information regarding the National Park Service (NPS) and the United States Coast Guard's (Coast Guard's) requests for restitution. In contrast to the picture the defendant presents, contemporaneous statements made by the defendant on the date of the offense show, and this Court found, that the defendant intended both to join the efforts of diverting the Platte River and for the diversion to be successful. The Court held that the defendant did divert the river. At a minimum, the defendant dug with a shovel in the river bottom, enhancing a trench, and moved rocks to such a degree that witnesses noticed a change in the flow of the water by the trench as he was working. The diversion resulted in destruction to wetlands and wildlife, and losses—some immeasurable—to the public and the National Park Service. As a long-time local homeowner and fisherman, the defendant acted with full knowledge that he was digging at a protected National Lakeshore and with full knowledge of the decision made by the NPS years before to discontinue the dredging of the Platte River.

1

Pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the government is entitled to mandatory restitution for losses it suffered as a result of the defendant's conduct.  The defendant's arguments that he should not be required to pay restitution are unavailing.  Only Congress has the power to make conduct criminal; tampering with and vandalizing National Park Service property is criminal only because Congress made it so under Title 18. The defendant's conduct caused direct and foreseeable pecuniary harm to NPS and the Coast Guard.  All the costs, including those incurred by the hydrologist, the natural resource team, and Coast Guard (including fuel, equipment costs and employee time), were incurred in the direct aftermath of the diversion and were necessary to address the ecological harm and to plan an appropriate mitigation strategy; they were neither normal nor routine and were not part of the criminal investigation. NPS and the Coast Guard are entitled to restitution for those losses.

I.    **Trial Testimony and Findings of the Court**

Contrary to the narrative presented by the defendant in his briefing, trial testimony and evidence, including admissions made by the defendant, show that he was digging in the riverbed and working in the river with his shovel for at least one hour before he was approached and intercepted by an NPS ranger.  (*See* Trial Transcript, R. 19 at PageID.115, 167, 170).  Further, testimony of numerous witnesses, and the findings of this Court, show that he intended with his actions to divert the river and ensure that the diversion was successful.  For example, Jamie Nelson, who arrived at the river around 3:45, watched the defendant use a large

2

shovel to move rocks across an area where the river becomes parallel with the Lake Michigan Shoreline.  As Ms. Nelson explained:

> A He was placing them in a built increasingly taller structure at that section of the river.
>
> Q And to place them on that structure was he moving the rocks from their original location?
>
> A Yes.

(*Id.* PageID.100 at lines 1-5.)

Ms. Nelson explained that she observed noticeable changes to the river flow as the defendant was working:

> Q While you were at the beach, did you observe any changes to the flow of the river?
>
> A What I noticed is that the water is starting to ripple around. It's rippling around where it can't go through where the rocks are, and as it's rippling around it starts to hit the sand on the other side.

(*Id.* at lines 10-25.)

Similarly, Kirk Walby testified he observed the defendant moving rocks and working with his shovel for a half hour or more on August 15, 2022.  (*Id.* at PageID.115, Testimony of Kirk Walby, lines 2-11). As Mr. Walby explained:

> Q Okay. So did you speak with this man at all?
>
> A He spoke with me.
>
> Q And what do you mean by that?
>
> A After tossing a few rocks he took the liberty of just walking over to me. I believe I was standing a little bit to his right out of the frame there. He made it a point to mention to me that as he tossed rocks or placed rocks that they were doing some good to help the flow of that current go out to Lake Michigan.

(*Id.* at PageID.113, lines 10-18)

> And, as the Court noted in its ruling:
>
> So when I review the evidence in the case I find that your actions were intended to and in fact did divert the flow of the Platte River into Platte Bay. In your own words, and as captured on body cam video, you told Officer Bahm -- -- that you were adding to what was there, in other words, the cut that was already there. . . . Officer Bahm also, however, saw him adding rocks to the wing dam, which was diverting and channeling water towards that new opening. Mr. Howard admitted that he came down to the beach that afternoon with the very intention of digging the trench. He told Officer Bahm, I did what I did. I was just trying to enhance it, the new channel, to move rocks and sand to make the water go that way, in other words, out the new channel and into Lake Michigan.

(*Id.* at PageID.202-204).

The Court found credible the testimony of witnesses regarding the defendant's actions in the river and summarized the testimony as follows:

> Zachary Hatfield saw Mr. Howard digging in the trench with the shovel, digging sand and rocks. Maybe egging would be the word I'd use kids. There apparently were kids there. . . .
>
> Ms. S., the young lady who was on the cross country team, testified that Mr. Howard told her that he was trying to make a gap big enough so that he could get his boat through it and that he could go out into the bay to fish for coho.
>
> Ms. Nelson testified that she saw Mr. Howard moving rocks that he used the shovel in part to move rocks.
>
> Kirk Walby testified that he saw Mr. Howard carrying rocks from the shoreline out towards Lake Michigan and extending the wing dam I'll call it that was extending from the beach back towards the shore right by the cut, so channeling water into the cut, and one of the -- one of the photographs or perhaps one of the videos illustrated that very condition. I could see the water. I could see the channel with the water coming through it, and I could see a rock wall, if you will, that's probably an exaggeration, or rocks in a wing shape channeling water right through this.

4

> Mr. Walby testified that Mr. Howard said, we're helping the flow of the current go into Lake Michigan. Talked about how he had brought his boat down earlier and had a very hard time getting it back upstream to the take out, and after Officer Bahm walked away said to -- Mr. Howard said to Mr. Walby, I dodged a ticket right there, which is certainly some acknowledgment that he knew what he was doing was wrong.

(*Id.* at PageID.204-205.)  Moreover, the Court also found the idea that children with their hands and plastic sand toys were responsible for digging the original trench was "ridiculous", but noted the defendant engaged with them and egged them on to some degree to assist him in his efforts. (*Id.* at PageID.137, 203-04.)

The evidence at trial showed that the defendant was the last person to materially participate in the Platte River diversion.  Although the United States did not present evidence that Mr. Howard dug the initial trench, the evidence is indisputable that he actively worked to make it wider, deeper, and to block the flow of the water to the original mouth of the river with stacked rocks so that it would flow faster through the new channel. Mr. Howard worked to ensure the success of the diversion so that he could get his boat out into the bay; a result he had been talking about for many years.

5

II.    **Argument**

   A.    **The Court convicted the defendant of offenses against property under Title 18.**

Congress criminalized and proscribed penalties for violations of National Park regulations in Title 18 U.S.C. § 1865 (*see, e.g.,* 54 U.S.C. § 100751; 36 C.F.R. § 1.3(a)). Only Congress has the power to criminalize violations of law. As other Courts interpreting National Park regulations have noted "the Secretary's authority to define by regulation what conduct is criminal in the national parks is proper because Congress, not the Secretary or the National Park Service, made it a misdemeanor to violate a regulation authorized by 54 U.S.C. § 100751." *United States v. Nieves*, No. 18-CR-835 (OTW), 2019 WL 1315940, at *3 (S.D.N.Y. Mar. 22, 2019) (*citing* 18 U.S.C. § 1865(a); other citations and quotations omitted). And, here, Congress did not make such violations criminal under Title 54; instead, Congress made the violations criminal under Title 18.

Specifically, 18 U.S.C. § 1865 provides "[a] person that violates any regulation authorized by section 100751(a) of title 54 shall be imprisoned not more than 6 months, fined under this title, or both, and be adjudged to pay all costs of the proceedings." Likewise, 54 U.S.C. § 100751(c) provides, "Criminal penalties for a violation of a regulation prescribed under this section **are provided by section 1865 of title 18**." (emphasis added).

As the Sixth Circuit has held, "[r]estitution ordered as part of a criminal sentence is punitive." *United States v. Sizemore*, 850 F.3d 821 (6th Cir. 2017) (internal citations and quotations omitted). Chapter 227, which contains the criminal

6

penalties available for violations of Title 18, includes 18 U.S.C. § 3556. Section 3556 provides: "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with 3663A and may order restation in accordance with 3663. The procedures under section 3664 shall apply to all orders of restitution under this section."

The mandatory restitution statute, Title 18 § 3663A(C)(1) provides "this section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense (A) that is … (ii) an offense against property *under this title*." If Title 18 is what makes the defendant's conduct *criminal*, as opposed to just a violation, the defendant's crimes are an *offense* under Title 18. Thus, the Court has a basis for imposing mandatory restitution under 18 USC § 1865.

    **1.    The legislative history of 18 U.S.C. § 1865 supports the imposition of MVRA restitution.**

The history of the location of the National Park Regulations in the United States Code is instructive. Prior to December 2014, most National Park Service Regulations were contained in Title 16. Specifically, Congress criminalized NPS violations in Title 16 § 3 (2013). As a result, prior to 2014, restitution would only have been authorized as a condition of probation under 18 U.S.C. 3563 (b)(2). In 2014, as part of an overhaul of the statutory scheme, Congress moved most of the National Park Service Regulations to Title 54 as part of Public Law 113-287. However, Congress explicitly moved the portions of the statute that criminalized the underlying C.F.R. regulation to Title 18 § 1865, a new statute in Title 18.

7

When moving and editing the statutory provisions, Congress explicitly provided, and intended to make clear "that a regulation under subsection (b) is a special type of regulation under subsection (a) so that a violation of a regulation under subsection (b) is subject to a *criminal penalty under* 18 U.S.C. § 1865." (Exhibit A, Legislative History, Subchapter IV—Administration SECTION 100751 (emphasis added)). Congress moved the criminal provision formerly contained in Title 16 to Title 18 and edited the text in 18 U.S.C. § 1865 for consistency with chapter 227. (*Id.*) Congress had a choice on where to put the authorizing criminal provision and it put the provision in Title 18. As the Supreme Court has noted, Congress is presumed to know existing law, including judicial interpretations of federal statutes, when it enacts a new law. *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Thus, Congress' actions in moving the criminal provision to Title 18 further provide a basis for imposing mandatory restitution under 18 USC § 1865.

**2. The case law the defendant cites does not support the result he seeks.**

In support of his argument, the defendant points to *United States v. Petit*, 541 F. Supp.3d 304 (2021) a district court case from the Southern District of New York. *Petit* is inapposite and the reasoning in *Petit* does not command the result the defendant seeks. In *Petit*, two defendants were convicted of securities fraud violations. Petit was convicted of securities fraud in violation of 15 U.S.C. § 78j(b), 78ff, 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2; Petit's co-defendant was convicted of conspiracy to commit securities fraud under 18 U.S.C. § 371. Although it held that the MVRA was inapplicable to Petit's conduct under 18 U.S.C. § 2, the district court

8

acknowledged that the MVRA applied to his co-defendant's conspiracy conviction under 18 U.S.C. § 371, even though the underlying offense was securities fraud, a non-title 18 offense. Section 371 provides "if two or more persons conspire . . . to commit any offense against the United States . . . each shall be fined under this title or imprisoned not more than five years, or both."

Thus, in *Petit*, though the text of regulation was located under another title, the MVRA applied. The Sixth Circuit held similarly in *United States v. Sawyer*, 825 F.3d 287, 292 (6th Cir. 2016) (imposing restitution for conspiring to violate the environmental laws, which are outside of Title 18). As with securities fraud under 371, in 18 U.S.C. § 1865, Congress provided "[a] person that violates any regulation authorized by section 100751(a) of title 54 shall be imprisoned not more than 6 months, fined under this title, or both, and be adjudged to pay all costs of the proceedings." Similarly, here with respect to the National Park regulations discussed above, 54 U.S.C. § 100751(a) provides that criminal penalties for violations of the statute will be pursuant to 18 U.S.C. § 1865.

The United States believes that the Third Circuit has the better argument and restitution should be imposed for violations of 18 U.S.C. § 2 (the statute at issue in the *Petit* case). *See United States v. W. Indies Transport, Inc.*, 127 F.3d 299 (3rd Cir. 1997). However, even if *Petit* is correct, the language of 18 U.S.C. § 2 is distinguishable from the statutory schemes set out in Title 18 U.S.C. § 371 and § 1865 (at issue here with the National Park regulations). Section 2 provides "whoever commits an offense against the United States or aids, abets, counsels, commands,

induces or procures its commission is punishable as a principal." The *Petit* Court found persuasive the fact that the criminal sanctions against the principal were not in Title 18. In contrast, Title 18 U.S.C. § 371 and § 1865 are the source of the criminal authorization and penalties (and in § 1865, provide the only source of authorization for criminalization of the conduct). Thus, even if the Court were to find that *Petit* is persuasive, the explicit language of 18 U.S.C. § 1865 and 54 U.S.C. § 100751 command a different result than the result in *Petit*, and the MVRA is applicable.

B.    **The Court may also impose restitution under § 3563(b)(2).**

In addition to restitution pursuant to 18 U.S.C. § 3663A under the MVRA, the Court may alternatively impose restitution under 18 U.S.C. § 3563(b)(2). *See* 18 U.S.C. §§ 3563(b)(2), (22), 3583(d). Such imposition would be discretionary. *See id*. Section (b)(2) provides "the court may provide, as further conditions of a sentence of probation . . . that the defendant (2) make restitution to a victim of the offense under section 3556 (but not subject to the limitations of section 3663(a) or 3663A9c)(1)(A)). Section 3556 provides that the procedures under § 3664 shall apply to all orders of restitution under this section. Orders of restitution pursuant Title 18 § 3563(b)(2) may be imposed for any offense; § 3563(b)(2) "provides the court with authority to require a defendant to '"make restitution to a victim of the offense . . . (but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A))."' *United States v. Coleman*, 370 F. Supp. 2d 661, 678-79 (S.D. Ohio 2005). As the Court noted in *Coleman*, "[t]his provision of 18 U.S.C. § 3563(b)(2) has been interpreted to except restitution from the limitations described in section 3663(a) when said restitution is ordered as a

10

condition of probation." *Id.* (citing *Gall v. United States*, 21 F.3d 107, 109-10 (6th Cir. 1994) (interpreting § 3563(b)(2) as "expressly negat[ing]" the limitations under § 3663(a) "where restitution is ordered as a condition of probation . . . ")); *see also United States v. Lexington Wholesale Co., Inc.*, 71 Fed. App'x. 507, 508 (6th Cir. 2003) ("[W]here restitution is imposed as a condition of probation, the provisions of § 3563(b)[ ], the Probation Statute, override the limitations of § 3663.") (*citing Gall*, 21 F.3d at 110). The same rationale would apply to 18 U.S.C. § 3663A.

The defendant's actions justify the Court's exercise of its discretion to impose restitution in this case. Individuals who have policy disputes with NPS should not feel entitled to enter park property and do as they please, thereby avoiding advocacy through legitimate channels. Absent a restitution order in this case, individuals like Mr. Howard may well believe the crime is worth the punishment. Failure to impose restitution despite the significant harm caused to the Platte River system and to remedy the pecuniary loss incurred by the government would only encourage further activity to benefit the needs of a few over express NPS, which exist to maximize and protect the precious resources of our National Parks and Lakeshores and the interests of the many.

**C. The government suffered pecuniary loss as a direct result of the defendant's offense for which restitution should be ordered.**

As the Sixth Circuit and Ninth Circuit explained in *Sawyer* and *Phillips*, "[t]he Government is entitled to restitution for site investigation costs if they are not routinely incurred prosecuting criminal cases but instead are a 'direct and foreseeable result' of the Government's mitigation of the damage Defendant caused." *United*

11

*States v. Phillips*, 367 F.3d 846, 864 (9th Cir. 2004); *see also United States v. Sawyer*, 825 F.3d 287, 293 (6th Cir. 2016). "This analysis requires an examination of the facts underlying the offense of conviction and not just a strict interpretation of the statutory offense." *United States v. Chin*, 965 F.3d 41, 59-60 (1st Cir. 2020); *see also United States v. Ruiz-Lopez*, 54 F.4th 400 (6th Cir. 2022) (rejecting elements only approach to imposing restitution).

A victim can receive restitution for pecuniary loss for the loss of its property caused by the defendant's conduct even in the absence of physical damage. For example, in *United States v. Wilfong*, 551 F.3d 1182, 1186 (10th Cir. 2008), the Tenth Circuit imposed restitution in the form of employee work hours lost after defendant made a bomb threat and employees were forced to evacuate. Although there was no bomb or damage to the building, the government still lost the value of its employee's wages during the time of the evacuation. *Id.*

Similarly, in *United States v. McNeil*, 744 F. App'x 941, 944 (6th Cir. 2018), the defendant publicly pledged support to a foreign terrorist organization and posted the names and addresses of American military members and encouraged others to harm them on social media sites. *See id.* at 944. The district court ordered the defendant to pay MVRA restitution to reimburse victims for the cost of ongoing and increased security measures. The Court of Appeals affirmed, finding that the district court did not abuse its discretion in awarding mandatory restitution to five victims for the cost of security expenses that were incurred following the threats, though there was no evidence that any of the threats or encouragement were acted upon. *Id.* at 944.

12

Here, it is undisputed that the defendant's diversion of the Platte River caused the government to suffer a direct and pecuniary loss; the government incurred expenses and lost time and resources it would not have expended absent the defendant's conduct. The redirection of the river and accompanying death and destruction of wildlife and wetlands required an immediate and emergent response. The response was not part of the criminal investigation; no hours related to the Rangers' time investigating the criminal charges are included in the requested costs. Further, the requested restitution was only for losses caused by assessing the immediate impact and ecological harm and were necessary to mitigate harm caused by the defendant's actions and determine an appropriate response and cleanup plan.

The mitigation and site investigation costs allowed in *Sawyer* and *Phillips* were not contingent on further remediation of harm. Rather, they were a subset of costs, and they were separately authorized as a loss attributable to the defendant's conduct. Specifically, in *Phillips*, the site investigation costs were the only costs imposed pursuant to the criminal conviction. *Phillips*, 367 F.3d at 864. The government pursued the additional cleanup costs under a separate civil statute. The immediate and targeted response of the NPS spearheaded by the Natural Resources Division, was not a scattershot process that occurred over a period of years, as in cases cited by the defendant involving complex financial investigations that overlapped and joined the criminal prosecution. The defendant should not receive a windfall simply because NPS determined that it should not take action to restore the river to its prior state because its investigation showed that further repair would

13

cause additional ecological harm to the National Lakeshore or to threatened or endangered species. As the Sixth Circuit has explained, restitution is meant to restore the victim to the position they had before the defendant's criminal conduct. *United States v. Lively*, 20 F.3d 193, 202 (6th Cir. 1994). Here, the NPS and the Coast Guard suffered a pecuniary loss and should be compensated. *See Sawyer*, 825 F.3d at 293 ("The district court properly concluded that restitution was mandatory under § 3663A because Sawyer's offense of conviction is a qualifying 'offense against property' and the EPA is an identifiable victim of that offense.)

### 1. The loss the NPS and Coast Guard suffered were a foreseeable result of the defendant's efforts to divert a river on protected NPS property.

That the defendant picked up his shovel and joined the cause of diverting a *river* in *a protected national lakeshore* means it is foreseeable that hydrologists and Coast Guard resources may become involved in responding to and mitigating that damage. The law is clear that the defendant need not be the sole cause of the harm for the Court to impose full restitution. *See United States v. Church,* 731 F.3d 530, 537–38 (6th Cir. 2013); *see also United States v. Buchanan,* 2023 WL 5352223, Case No. Nos. 22-3301/3697 (6th Cir. August 21, 2023). Further, as pointed out by the Court, the defendant's contemporaneous statement that he "dodged a ticket right there" was an acknowledgement that he knew his actions were wrong. (Trial Transcript, R. 19 at PageID.205.)

Lastly, the defendant cites a news article regarding potential future dredging operations in the area. But the fact that the State of Michigan is seeking to work

14

with NPS, through legal and agreed upon channels, to achieve the result that the defendant sought does not alleviate the fact that the defendant caused pecuniary harm to the NPS and the Coast Guard with his unauthorized criminal actions and should be held accountable for that harm.

**D. Title 18 U.S.C. § 1865 mandates that the Court shall impose all cost of the proceeding; the costs the government requests are appropriate and proper.**

Title 18 U.S.C. § 1865(a) provides "[a] person that violates any regulation authorized by section 100751(a) of title 54 *shall . . . be adjudged to pay all cost of the proceedings.*" (emphasis added). While taxing costs of proceedings or prosecution is not typical in criminal cases, some statutes, especially those for offenses against the government, provide for cost recovery. *See, e.g.*, 26 U.S.C. § 7201. In federal civil cases, taxation of costs is controlled by federal law, generally Fed. R. Civ. P. 54. The Court has some level of discretion in civil cases when imposing costs and may only impose allowable costs as enumerated by statute. *See, e.g., Maletta v. Woodle*, 2023 WL 2495808 (M.D. Fla. Mar. 14, 2023). However, although the government has cited to the civil statutes as a guide in its Sentencing Memorandum, in contrast to the civil provision, the cost shifting provision provided in 18 U.S.C. § 1865 is mandatory and provides for taxation of *all* costs. Although the government has not identified relevant cases addressing this cost-shifting provision, witness travel costs are taxable by statute even in civil cases; the costs the government requested meet that standard and are recoverable in this case. *See id.* (taxing witness travel and subsistence costs).

**E.     The defendant bears the burden of demonstrating his inability to pay restitution in full immediately; the defendant is a successful businessman and is the beneficiary of funds raised through a Go Fund Me account.**

Victims have a right to "full and timely restitution as provided by law." 18 U.S.C. § 3771(a). Statutorily, the Court is required to do two things when imposing restitution. First, the Court must order restitution in "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.'" 18 U.S.C. § 3664(f)(1)(A). Second, the Court "shall specify in the restitution order the manner in which, and schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). The Court may order payment of "a single, lump sum payment, partial payments at specified intervals, in kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A).

From all accounts, the defendant is a successful businessman. He owns a vacation home in Northern Michigan, where he keeps his fishing boat. Additionally on February 4, 2024, a Go Fund Me page was set up for the benefit of the defendant "asking his supporters to contribute to his ongoing legal battle with the National Park Service." (Exhibit B, Go Fund Me for Andrew Blair Howard). To date, the fundraiser has received nine donations and has collected a total of $5,825.00. (*Id.*). The page indicates that the fundraiser was organized by "US Citizens for Justice" in Grand Rapids, MI. The government has not been able to locate any additional information about the organizer, as it is not registered with the State of Michigan or as a 501(c)(3) with the IRS.

16

Unless the defendant provides evidence to the contrary, the Court should order restitution to be due and payable immediately. To the extent the Court orders restitution as a condition of probation, the Court should order the payment schedule so that restitution is paid in full over the term of probation.

## III. Conclusion

For the reasons stated herein, and in the government's Sentencing Memorandum, the Court should impose full, mandatory restitution and, alternatively, restitution as a condition of probation, and costs of proceedings as requested.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: April 22, 2024

*/s/ Meagan D. Johnson*
MEAGAN D. JOHNSON
LAUREN F. BIKSACKY
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404